**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JARED MICHEL THOMAS, ESQ.**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| NITA TROTT-FLUTY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A05-1306-CR-290 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURG CIRCUIT COURT
The Honorable David D. Kiely, Judge
Cause No. 82C01-1207-FD-912

**January 27, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Nita Trott-Fluty ("Trott-Fluty") was convicted after a jury trial of Resisting Law Enforcement, as a Class D felony;[1] Resisting Law Enforcement, as a Class A misdemeanor;[2] and Disorderly Conduct, as a Class B misdemeanor.[3] She was sentenced to an aggregate term of eighteen months imprisonment, and now appeals.

We affirm.

**Issues**

Trott-Fluty presents two issues for our review, which we restate as:

I.    Whether the trial court abused its discretion when it did not take into account at sentencing her medical conditions; and

II.    Whether her sentence was inappropriate.[4]

**Facts and Procedural History**

On July 17, 2012, Trott-Fluty was in Garvin Park in Evansville. Patrolling the park that day in full uniform and on a marked motorcycle was Evansville Police Department Officer Allen Gansman ("Officer Gansman"). Officer Gansman saw Trott-Fluty get in and out of her car several times before she moved her car, parked it in a no-parking zone at the

---

[1] Ind. Code §§ 35-44.1-3-1(a)(3) & (b)(1)(A).

[2] I.C. § 35-44.1-3-1(a)(2).

[3] I.C. § 35-45-1-3(a)(1).

[4] Trott-Fluty frames these as a single issue—whether her sentence was inappropriate—but her argument advances both an inappropriateness challenge and a challenge to the trial court's determination of mitigating factors.

2

entrance to a greenway in the park, and walked off the greenway path down a steep embankment.

Trott-Fluty's conduct, together with the hot temperature that day, made Officer Gansman worry that Trott-Fluty was in distress. Officer Gansman left his motorcycle and approached Trott-Fluty to ask if she needed any help; Trott-Fluty responded by saying that she was there to feed wildlife, but did not appear to have anything with her other than her purse. Officer Gansman left Trott-Fluty and approached her car to check the plate on the vehicle against public records to see if there were any alerts concerning Trott-Fluty.

Soon thereafter, Trott-Fluty returned to her car and drove away at a high rate of speed through the park. Officer Gansman used a laser-based speed detection device, which measured the car's speed at twenty-nine miles per hour—fourteen miles per hour faster than the posted speed limit in the park.

Officer Gansman turned on his motorcycle's lights and siren and attempted to initiate a traffic stop. Trott-Fluty continued driving, however, travelling through numerous intersections and passing numerous parking lots where she could have pulled over safely.

As required by the department's standard operating procedures, several other police officers in marked police cars responded to assist Officer Gansman, including Officer Steve Hicks ("Officer Hicks"). The officers pursued Trott-Fluty, whose driving while fleeing had become sufficiently erratic that Officer Hicks was concerned for public safety.

Trott-Fluty eventually stopped her car about a mile beyond where Officer Gansman began his pursuit. Officer Hicks stopped his vehicle in order to block Trott-Fluty from

3

fleeing and exited his vehicle with his service pistol drawn. When he approached Trott-Fluty's window, he observed her acting erratically, and she appeared to be yelling something at him.

Once stopped, Trott-Fluty did not exit the car on her own and continued to hold onto the steering wheel with "white knuckles." (Tr. at 82.) Finding the driver's door locked, Officer John McQuay ("Officer McQuay") opened the passenger side of the vehicle and tried to remove Trott-Fluty's hand from the steering wheel; she actively resisted, and a struggle ensued, during which Trott-Fluty continued to scream, yell, and act erratically. Officer McQuay was, however, able to open the driver's door so that other officers could assist him.

Once out of the car, Trotty-Fluty continued to struggle with officers to such an extent that a Taser was used, but she was eventually handcuffed. Trott-Fluty calmed down enough to be placed in Officer Hicks's police car for transport; however, Officer Hicks's car began to overheat and broke down. After pulling to the side of the road, Officer Hicks, Officer McQuay, and another officer worked to arrange a transfer of Trott-Fluty from Officer Hicks's car to that of Officer McQuay.

As Officer Hicks tried to move Trott-Fluty around his car and toward the other police vehicle, Trott-Fluty twisted and jerked hard away from Officer Hicks. Officer Hicks was able to move Trott-Fluty to the other police car only by dragging her toward the car. Upon reaching the car, Trott-Fluty again stiffened up and resisted being placed in the backseat. Officer McQuay ordered Trott-Fluty to sit, but she did not comply with this instruction, and it

4

was only when Officer McQuay used a Taser on Trott-Fluty that the officers were able to seat her in the vehicle.

Trott-Fluty's struggling did not cease at this point, however. Once placed in Officers McQuay's car, she began to scream and flail around again, and the officers determined that a police wagon would be necessary to transport Trott-Fluty. The officers removed her from the vehicle and placed her on the ground so she could not easily injure herself or other people.

Eventually, Trott-Fluty was calm enough to be moved into a seated position. At that point, however, she saw several individuals standing outside a business nearby and began yelling at those bystanders and then at a passing bicyclist. Officer Hicks twice instructed Trott-Fluty to stop yelling, and she refused. Eventually, however, Trott-Fluty was picked up by a police wagon for transport.

On July 19, 2012, Trott-Fluty was charged with Resisting Law Enforcement, as a Class D felony; Resisting Law Enforcement, as a Class A misdemeanor; and Disorderly Conduct, as a Class B misdemeanor.

On April 15, 2013, a jury trial was conducted, at the conclusion of which the jury found Trott-Fluty guilty as charged.

On May 15, 2013, a sentencing hearing was conducted. At its conclusion, the trial court entered judgments of conviction on all three counts and sentenced Trott-Fluty to eighteen months imprisonment for Resisting Law Enforcement, as a Class D felony; one year of imprisonment for Resisting Law Enforcement, as a Class A misdemeanor; and 180 days

5

imprisonment for Disorderly Conduct, as a Class B felony. Each of these were run concurrent to one another, yielding an aggregate sentence of eighteen months.

This appeal ensued.

## Discussion and Decision

### Mitigating Factors

Trotty-Fluty challenges both the trial court's determination of mitigating factors and the appropriateness of her sentence. We address each issue in turn.

Generally, we review a trial court's sentencing decision for an abuse of discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. Id. A trial court "must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." Id. at 491. We will not, however, reassess the weight the trial court assigned to each factor. Id. ("[t]he relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse [of discretion]"). At sentencing, where a trial court has abused its discretion, we will only reverse and remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 490. That is, if the trial court would have reached the same result in fixing a defendant's sentence with proper determination of aggravating and mitigating factors, we will not disturb the sentence unless it is inappropriate under Appellate Rule 7(B) or subject to some other defect.

Here, Trott-Fluty acknowledges that the trial court took into account her limited criminal history as a mitigating factor, but contends that the trial court improperly disregarded her medical conditions as a mitigating factor in fixing her sentences and did not take into account the fact that the arresting officers in the case declined to appear at the sentencing hearing. Our review of the record reveals that there is a single mention in the presentencing report that Trott-Fluty suffers from anemia and asthma, but there is no evidence as to the extent of those conditions. While the arresting officers did not appear at the sentencing hearing, both Officers Hicks and McQuay sent email messages to the probation office indicating that they believed Trott-Fluty to suffer an emotional or mental disturbance, and Officer McQuay opined that some term of imprisonment would be appropriate.

Yet Trott-Fluty did not advance any of this as a basis for leniency during the sentencing hearing; instead, counsel drew the trial court's attention only to her limited criminal history, while Trott-Fluty herself disputed the accuracy of the entire report and voluntarily left the courtroom. Though she contends that the trial court did not enter specific findings as to aggravating and mitigating factors at sentencing, the trial court set forth its reasons—namely, the absence of a significant prior criminal history and the probation department's report that Trott-Fluty was a moderate risk to re-offend. And to the extent Trott-Fluty insists that the trial court should have afforded more weight to her mitigating factors, that facet of the court's decision is not subject to appellate review. See Anglemyer, 868 N.E.2d at 491.

Under these circumstances, we cannot conclude that the trial court abused its discretion at sentencing.

Inappropriateness

We turn to Trott-Fluty's other contention on appeal, that her sentence was inappropriate under Appellate Rule 7(B).

The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. Cardwell v. State, 895 N.E.2d 1219, 1222-25 (Ind. 2008); Serino v. State, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. Cardwell, 895 N.E.2d at 1225.

Here, Trott-Fluty was convicted of Resisting Law Enforcement, as a Class D felony, which carried a sentencing range of between six months and three years, with an advisory term of eighteen months imprisonment, I.C. § 35-50-2-7(a); Resisting Law Enforcement, as a Class A misdemeanor, which carries a maximum term of imprisonment of one year, I.C. § 35-50-3-2; and Disorderly Conduct, as a Class B misdemeanor, which carries a maximum

8

term of imprisonment of 180 days. I.C. § 35-50-3-3. Trott-Fluty was sentenced to the eighteen-month advisory term for Resisting Law Enforcement, as a Class D felony; the maximum one-year term for Resisting Law Enforcement, as a Class A misdemeanor; and the maximum term of 180 days for Disorderly Conduct, as a Class B felony. The three terms were run concurrent to one another, yielding an aggregate term of imprisonment of eighteen months.

Trott-Fluty's conduct resulted in a police chase and two separate struggles with police officers—once when she stopped her car, and once when Officers Hicks and McQuay tried to transfer her from Officer Hicks's squad car to that of Officer McQuay. Police were twice required to use Taser devices to subdue Trott-Fluty, and ultimately she was still too resistant to be transported by police car.

The trial court afforded Trott-Fluty some mitigation in the form of a limited criminal history. Our review of the presentencing investigation report reveals that Trott-Fluty has previously been convicted of misdemeanor-level Conversion, Resisting Law Enforcement, Criminal Trespass, and Disorderly Conduct. She also has a history of encounters with law enforcement, and at the time of her sentencing was facing charges for Resisting Law Enforcement and Reckless Driving in an unrelated case. And while Trott-Fluty has some college education, including an associate's degree, she was not employed at the time of her sentencing.

9

Having thus reviewed the matter, we conclude under Appellate Rule 7(B) that the trial court did not impose an inappropriate sentence, and the sentence does not warrant appellate revision. Accordingly, we decline to disturb the sentence imposed by the trial court.

## Conclusion

The trial court did not abuse its discretion in determining mitigating factors at sentencing. Trott-Fluty's sentence is not inappropriate.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.