ATTORNEY FOR APPELLANT
Daniel J. Moore
Lafayette, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 79S04-1412-CR-730

WILLIAM A. PARKS,

*Appellant (Petitioner below),*

v.

STATE OF INDIANA,

*Appellee (Respondent below).*

Appeal from the Tippecanoe Superior Court, No. 79D01-1209-FA-14
The Honorable Randy J. Williams, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 79A04-1305-CR-259

**December 10, 2014**

**David, Justice.**

William Parks was convicted of Class A felony dealing in methamphetamine and received an aggregate sentence of forty (40) years. Parks now asks this Court to evaluate the appropriateness of that sentence in light of the nature of the offense and his character under

Indiana Appellate Rule 7(B). Reaffirming our authority and our reluctance to grant such a request, in this case our collective judgment has determined that a sentence revision is warranted.

**Facts and Procedural History**

On the morning of September 15, 2012, William Parks and Amanda Gentry went to the apartment of David Reeve. Parks told Gentry he planned to "try to cook" at the apartment, which Gentry understood to mean cook methamphetamine. (Tr. at 148.) While at Reeve's apartment, Gentry started smelling strong chemical odors coming from the back room. During the process of cooking, Reeve knocked over a container of chemicals. The chemical smell became significantly more intense, and the windows and doors were opened due to the smell. Jeffrey Deaton was also present at Reeve's apartment on September 15, 2012, during this time period.

Later that evening, Officer Kurt Sinks and Officer Scott Clark were dispatched to the apartment after receiving reports of a suspected methamphetamine lab. When Officer Sinks approached the apartment he saw the open door and windows and immediately smelled a strong odor coming from the apartment. Upon getting closer, Officer Sinks' nose and throat started burning, and he was uncertain whether it was safe to enter the premises. He saw Gentry and Deaton sitting inside, declined Gentry's offer to enter the apartment and instead requested that the two step outside to speak with him. Officer Sinks was informed that another individual was inside, at which point he called inside the apartment asking the individual to exit. The individual identified himself as Parks. Upon learning that the police were there due to a report of a suspected methamphetamine lab, Parks immediately denied that there were any drugs or a methamphetamine lab inside the apartment. Parks was eventually transported to police headquarters, where he waived his Miranda rights and was questioned by Officer Chad Robinson.

During the interview with Officer Robinson, Parks was calm and cooperative. Parks admitted to using and attempting to cook methamphetamine. Parks insisted that he wanted to be

honest and expressed his regret in being involved in this incident. He explained that in two attempts to cook, he produced about three-quarters of a gram of methamphetamine each time.

The other officers returned to the apartment with a search warrant. The Indiana State Police methamphetamine team was also present processing the scene. Various items were collected from the scene, including: lithium batteries, various plastic containers, a black trash bag filled with additional plastic containers and funnels, a homemade smoking device, and coffee filters. Indiana State Police Trooper Brock Russell, who has extensive experience in investigating methamphetamine labs, concluded that methamphetamine had been manufactured using the one pot method.[1]

On September 21, 2012, Parks was charged with: Count I, Class A felony conspiracy to commit dealing in methamphetamine; Count II, Class A felony dealing in methamphetamine; Count III, Class C felony illegal drug lab; Count IV, Class B felony possession of methamphetamine; and Count V, Class D felony possession of a syringe. The State dismissed Count V. The jury subsequently found Parks guilty on the remaining four counts and determined that the offenses occurred within one thousand (1,000) feet of a family housing complex. At sentencing Parks apologized for his actions and expressed regret for the hurt he had brought onto his family and community. He acknowledged that his drug addiction has continually caused problems in his life and hoped that he would be able to receive rehabilitation. Several members of Parks' family filed letters with the court in support of him.

---

[1] The one pot method consists of creating your own ammonia and using any vessel, such as a pop bottle or jug. It requires pseudoephedrine, ammonia nitrate or sulfate from cold packs or lawn fertilizer, lye (various types may be used), lithium from batteries, and camp fuel, starting fluid, or lighter fluid, etc. to each be added to a single bottle. At this point, "the reaction is going to get hot . . . . This is where it's highly volatile because . . . all those chemicals that are mixing . . . are not intended to be mixed together." (App. at 94). Pressure can easily build up and a vessel can explode.

The trial court found the following aggravating factors: Parks' criminal history as a juvenile and an adult;[2] petitions to revoke probation; failed prior attempts to rehabilitate; and a history of substance abuse. The court also found mitigating factors, which consisted of: Parks' family support; cooperation with law enforcement; and the emotional support of his children. However, determining that the aggravating factors outweighed the mitigating factors, the trial court sentenced Parks to forty (40) years for the crime of Class A felony dealing in methamphetamine as charged in Count II.[3] Counts I, III, and IV were merged into Count II. Of the forty-year sentence, twenty-six (26) years were to be executed in the Indiana Department of Correction, four (4) years were to be executed through Tippecanoe County Community Corrections, and ten (10) years of the sentence were suspended to probation, of which five (5) years were to be supervised probation and five (5) years were to be unsupervised.

Parks initially filed a pro se notice of appeal on June 24, 2013. Parks was appointed appellate counsel, and an amended notice of appeal was filed on August 12, 2013. Parks appealed his sentence under Indiana Appellate Rule 7(B), contending that his sentence was inappropriate given the nature of the offense and his character. The Court of Appeals analyzed the nature of the offense and Parks' character separately, and ultimately determined that the sentence imposed by the trial court was appropriate. Parks v. State, No. 79A04-1305-CR-259

---

[2] Parks was adjudicated a delinquent child for: criminal deviate conduct; receiving stolen property; dealing in a look-a-like substance; theft; and possession of marijuana. Parks' adult record includes convictions for: Class A misdemeanor operating while intoxicated; Class D felony battery; and Class D felony possession of chemical reagents and precursors.

[3] Indiana Code § 35-48-4-1.1 (2008) provides in pertinent part:

> (a) A person who: (1) knowingly or intentionally . . . manufactures . . . methamphetamine . . . or (2) possesses, with intent to . . . manufacture . . . methamphetamine . . . commits dealing in methamphetamine, a Class B felony, except . . . (b) The offense is a Class A felony if . . . (3) the person manufactured, delivered, or financed the delivery of the drug . . . (B) in, on, or within one thousand (1,000) feet of . . . (iii) a family housing complex . . . .

4

(Ind. Ct. App. May 22, 2014).  This Court now grants Parks' petition to transfer and thereby vacates the Court of Appeals opinion.  See Ind. Appellate Rule 58(A).

**Standard of Review**

"Appellate review of the merits of a sentence may be sought on the grounds outlined in Appellate Rule 7(B)."  Cardwell v. State, 895 N.E.2d 1219, 1223 (Ind. 2008).  Under Indiana Appellate Rule 7(B), a reviewing court "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."  Ind. Appellate Rule 7(B).

**Sentence Revision under Indiana Appellate Rule 7(B)**

Indiana Appellate Rule 7(B) leaves much to the discretion of appellate courts, but it does not detract from the long-recognized principle that "sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference."  Cardwell, 895 N.E.2d at 1222.  In conducting review under this standard, this Court has acknowledged that "reasonable minds may differ" on the appropriateness of a sentence based on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case."  Buchanan v. State, 767 N.E.2d 967, 970 (Ind. 2002); Cardwell, 895 N.E.2d at 1224.  In light of this understanding, we reluctantly exercise our authority to revise Parks' sentence.

**Conclusion**

In our collective judgment, Parks' sentence is excessive.  We believe a more appropriate sentence given the nature of the offense and the character of the defendant would be an aggregate sentence of thirty (30) years, with twenty (20) years to be executed at the Department of Correction, two (2) years to be executed through the Tippecanoe County Community

Corrections, and eight (8) years to be suspended to probation, of which four (4) years Parks should be placed on supervised probation and four (4) years on unsupervised probation. This case is remanded to the trial court to impose a sentence of thirty (30) years for Count II dealing in methamphetamine[4] to be served as stated.

Rush, C.J., Rucker, J., concur
Dickson, J., dissents with separate opinion in which Massa, J., joins.

---

[4] Recognizing that Counts I, III, and IV were merged into Count II.

**Dickson, Justice, dissenting.**

I respectfully dissent, believing that the trial court's sentencing determination should be affirmed in this case.

The appellate authority to review and revise criminal sentences provided in Article 7, Section 4 of the Indiana Constitution is merely a permissive option. It is implemented by Indiana Appellate Rule 7(B), which also uses permissive language to state that an appellate court "may revise a sentence." We have noted that this formulation of balancing the trial court's sentencing decision with the possibility of appellate revision on appeal "places central focus on the role of the trial judge, while reserving for the appellate court the chance to review the matter in a climate more distant from local clamor." Serino v. State, 798 N.E.2d 852, 856–57 (Ind. 2003). In light of an appellate tribunal's limited opportunity to fully perceive and appreciate the totality of the circumstances personally perceived by the trial judge at trial and sentencing, the "due consideration of the trial court's decision" required by Rule 7(B) should restrain appellate revision of sentences to only extremely rare, exceptional cases. Further, when the sentencing decision of the trial court is within the statutory range and the record reflects careful and considerable deliberation by the trial court, we ought to exercise even more restraint in revising a defendant's sentence.

Any greater frequency in appellate revision of criminal sentences may induce and foster reliance upon such review for ultimate sentencing evaluations and thus serve as a disincentive to the cautious and measured fashioning of sentences by trial judges. Restrained sentencing decisions are best made by a trial judge with the gravity that results from knowing that the judge's decisions are essentially final.

I am not convinced that this case is sufficiently rare or exceptional to warrant appellate intrusion into the trial court's sentencing decision. It is well settled that it is the defendant who must "persuade the appellate court that his or her sentence has met th[e] inappropriateness

standard of review" under Rule 7(B). <u>Anglemyer v. State</u>, 868 N.E.2d 482, 494 (Ind. 2007) (quoting <u>Childress v. State</u>, 848 N.E.2d 1073, 1080 (Ind. 2006)). Also, the legislature has provided an advisory sentence that acts as the starting point for the trial court when selecting an appropriate sentence for the crime committed. *See* <u>Anglemyer</u>, 868 N.E.2d at 494. The particular circumstances of each individual case then guide the trial court's decision to deviate above or below the advisory sentence, while not exceeding the statutory maximum sentence for the offense. Appellate review under Rule 7(B) affords the reviewing court the opportunity to determine if the evidence in the record regarding the nature of the offense and the character of the defendant render that sentence inappropriate.

The defendant argues that his character and the nature of the offense warrant revision of his sentence under Rule 7(B) because the trial court's sentence was "near the extreme[] of the statutory range," which is often "plainly inappropriate" under Indiana law. Trans. Pet. at 6. Regarding the nature of the offense, he emphasizes that the amount of methamphetamine produced in the two days of production was minimal, that the time frame of the operation (two days) was short, that the minimal amount produced was for personal consumption rather than dealing or manufacturing, and that the actual location of the operation was not subject to his control. As to his character, the defendant argues that mitigation consideration is warranted due to the coincidence of his prior criminal history and his substance abuse issues (implying that he was a victim of his addiction problem which should warrant sympathy and tolerance); his cooperation with law enforcement in this case; his apologetic demeanor toward the court, community, and his family; his genuine remorse; his family's support for him as a man and an involved father; and his need to provide for dependent children.

Contrary to the defendant's assertion, however, his sentence is not at the extreme end of the statutory range. The sentencing range for this crime is twenty to fifty years, with a statutory advisory sentence of thirty years. Ind. Code § 35-50-2-4 (2008). The trial court sentenced the defendant to forty years of which ten were suspended to probation and only thirty were to be actually served. Twenty-six years were to be executed at the Indiana Department of Correction

2

and four years executed at the Tippecanoe County Community Corrections. Assuming successful completion of probation, the defendant's time served under the sentence would be only thirty years. In today's decision, the majority makes relatively little modification and reduces the time served from thirty to twenty-two years, declaring the latter to be "more appropriate." I respectfully believe that an appellate court's sentencing review and revision capacity and authority does not warrant such minor adjustments.

Also, amplifying the serious nature of the offense, the defendant callously engaged in the dangerous process of manufacturing methamphetamine in a residential area where families with several young children lived. The chemicals involved are both corrosive and prone to dangerous explosions, requiring careful attention by the producer of the product. The defendant engaged in the manufacturing process even though he had been up for several days in a row, and he knocked over the meth solution during production, causing an overwhelming chemical odor and effects to be noticeable a good distance from the residence. Because the production of the methamphetamine within 1,000 feet of a family housing complex warranted the defendant's crime to be treated as a Class A felony, *see* Ind. Code § 35-48-4-1.1(b)(3)(B)(iii) (2008), the mere proximity to family housing, standing alone, may well be disregarded as an aggravating circumstance, but this does not preclude consideration of the careless manner of production despite the defendant's personal awareness of the proximity to children.

Similarly, there is considerable evidence that reflects adversely on his character. The defendant committed the instant offense while on probation, and his criminal history includes a 2010 conviction for felony possession of chemical reagents or precursors. His past criminal history is riddled with such probation violations and revocations. The defendant claims that he was an involved and loving father, but he had been consistently in arrears in child support. The defendant's initial denial to officers of the existence of a meth lab in the residence is incongruent with his claim of genuine remorse and active cooperation. And, the trial court found that the defendant was a high risk to re-offend.

3

Giving due consideration to the trial court's responsibility and unique opportunity to perceive and assess relevant factors, its decision imposing a moderate sentence near the middle of the designated statutory range, particularly in light of the serious nature of the offense and the lack of demonstrated virtuous character of the defendant; this case is not an extremely rare, exceptional case warranting appellate sentence modification. I decline to join the Court's opinion finding this sentence to be inappropriate.

Massa, J., concurs.