**Stephen T. SERINO, Appellant (Plaintiff below),**

v.

**STATE of Indiana, Appellees (Defendants below).**

No. 32S01–0305–CR–210.

Supreme Court of Indiana.

Nov. 19, 2003.

Paula M. Sauer, Danville, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

The State charged appellant Stephen T. Serino with twenty-six counts of child molesting and sexual misconduct involving a minor, and a jury found him guilty on all counts. These charges involved various acts committed with a teenage boy over about three years. The trial court sentenced him to 385 years in jail. We affirm the conviction, but revise the sentence to ninety years.

### Facts and Procedural History

Serino became friends with S.M.'s mother when the child was just two years old. Their encounters were sporadic; sometimes as much as two years would go without seeing each other. In 1992, the mother wished to have her son tested for attention deficit disorder and she contacted Serino, who worked for the local schools and had training in psychology. After this experience, she and her sons saw more of Serino.

When Serino became divorced in 1996, they began spending regular time with Serino and his adopted son. The first inappropriate conduct occurred during 1997, when S.M. was eleven. Serino began giving him backrubs and by summer progressed to rubbing S.M.'s penis beneath the boy's underwear. Such conduct proceeded over the winter.

Serino and his teenage son moved to Wisconsin during the summer of 1998. They returned in the fall of 1999 when Serino began a new job at the schools in Owen County. S.M.'s mother and her sons moved to a new home in Plainfield about the same time. By January 2000 the two parents began dating, the families were spending most weekends together, and Serino became a father figure to S.M.

The bad news was that Serino also took up once again molesting the boy. Serino and the boy slept in a bed together during overnight visits, and Serino fondled S.M. and sucked his penis, forced S.M. to do the same, and eventually began demanding that S.M. perform anal sex on him. Though S.M.'s mother had no concern about the sleeping arrangements, Serino's aunt objected, and the mother began asking that the sleeping arrangements change, at least when overnights were under her roof.

These activities sometimes occurred under especially distasteful circumstances. Serino and his son commonly went to church on Wednesday evenings, and they sometimes picked up S.M. to go with them.

Overnight visits after church turned into sexual abuse of S.M.

The parents' romantic relationship ended in the fall of 2000, and it appeared that S.M. became increasingly sensitive to the mention of Serino's name. About two months later, he told his mother about Serino's molestations. This led to the charges of twenty-six counts, the jury verdict, and the sentence.

On appeal, Serino challenged his conviction and sentence on multiple grounds. The Court of Appeals affirmed. *Serino v. State,* 784 N.E.2d 591 (Ind.Ct.App.2003). We granted transfer to consider Serino's appeal of his sentence. We summarily affirm the decision of the Court of Appeals concerning Serino's other claims of error. Ind. Appellate Rule 58(A).

## I. Possible Approaches to Sentencing

American jurisdictions have embraced a variety of methods for imposing criminal sentences, and most states and the federal government have revised their practices over time.

Indeterminate sentencing arrangements, for example, provide for sentences stated as a range of years, such as "ten to twenty years." Black's Law Dictionary 1367 (7th ed. 1999). Indiana used this system until 1977, so that, for example, the punishment for child molesting used to be either one to five years for molesting children between twelve and sixteen years old, or two to twenty-one years for molesting children under twelve years of age. Ind.Code Ann. § 35–1–54–4 (Michie 1975).[1]

Under indeterminate sentencing systems, the actual number of years of incarceration was decided by officials of the executive branch, typically based on the behavior of the prisoner. Under Indiana's old system, it was the task of the parole board to determine when an offender was ready for release. *See generally* Hon. Louis B. Meyer, *North Carolina's Fair Sentencing Act: An Ineffective Scarecrow,* 28 Wake Forest L.Rev. 519, 557 n. 249 (1993).

A leading alternative to such arrangements has been determinate sentencing, under which the court imposes a penalty stated as a specific number of years. The current version of this system employed in Indiana provides for a "standard" sentence, from which the trial judge may add or subtract based on findings of aggravating or mitigating circumstances. Thus, the standard sentence for the crime of child molesting as a class A felony is thirty years, to which the trial judge may add as much as twenty or subtract as much as ten years. Ind.Code Ann. § 35–50–2–4 (West 1998). One could characterize this system as one in which judicial discretion is guided within a range. It thus produces widely varying sentences for similar crimes, especially when the prosecutor elects to file multiple charges arising out of the same basic events.

Of course, a respectable legal system attempts to impose similar sentences on perpetrators committing the same acts who have the same backgrounds. While it is widely recognized that this is extremely difficult to achieve in any court system that makes thousands of such decisions annually, serious efforts to achieve it continue. In the federal system, judges are bound by a scheme of guidelines in which points are assigned for various factors relevant to sentencing. The 2003 sentencing guidelines, prepared by the Office of Special Counsel of the United States Sentencing Commission, are promulgated pursuant to the PROTECT Act, Pub.L. 108–21.

Several states have undertaken similar exercises. Georgia adopted a comparable

---

**1.** These laws were repealed by Pub.L. 148–24 (1976).

but non-binding guideline to "reserve the hardest bed for the hardest criminal." Walter C. Jones, *Panel recommends sentencing guidelines,* The Augusta Chronicle, December 2, 1999. Likewise, Oregon adopted an indeterminate structure and added a parole matrix. It reasoned, "[a] corrections system that overruns its resources can increase the risk to life and property within the system and to the public." *See* Oregon Sentencing Guidelines, (2003) *available at http:// www.ocjc. state.or.us/ SG.htm.* Arizona adopted the indeterminate sentencing structure, but later opted to revise the scheme to a presumptive term. *Arizona v. Wagner,* 194 Ariz. 1, 976 P.2d 250, 255 (Ct.App.1998) (citing Rudolph J. Gerber, Criminal Law of Arizona, ch. 7, at 702–08 (2nd ed. 1993)).[2]

Several states have abandoned indeterminate sentencing and instead adopted a "Truth–in–Sentencing" system to reduce the likelihood of confusion and uncertainty regarding a particular sentence. In 1995, Ohio offered greater protection for victims of crime, broadened discretion for trial judges in sentencing, limited appellate review of sentencing, and abolished the traditional "good time" concept. *See* Ohio Bar Association (2003), *available at http:// www.ohiobar. org/.* The Congress has fostered this movement by adding provisions in federal grant programs that promote state adoption of "Truth–in–Sentencing" laws. *See, e.g.,* 42 U.S.C. § 13704 (2002) (lists eligibility and exceptions for "Truth-in–Sentencing" incentive grants); *see also* 42 U.S.C. § 13703 (2002) (applies "Truth-in–sentencing" law to violent offender incarceration).

As for serious grid systems, Massachusetts used one scheme whereby the grid cell represented the governing offense and the classification of the criminal history to determine an appropriate sentence for the offender. *See http:// www.state.ma.us/ courts/ formsandguidelines/ index.html.* Michigan also followed a system to reduce unwarranted disparities in sentencing decisions. *See People v. Hegwood,* 465 Mich. 432, 636 N.W.2d 127, 131 (2001). Likewise, Minnesota adopted similar guidelines to promote proportionality and uniformity in sentencing. *See* Minnesota Sentencing Guidelines Commission, (2003), *available at http:// www.msgc.state.mn.us/ goals_of_the_guidelines. htm* (explains goals of sentencing guidelines). The American Law Institute has a major project under way to develop a model for sentencing commissions and guidelines. A.L.I., *Model Penal Code: Sentencing,* Preliminary Drafts No. 2, June 3, 2003.

The federal system is the one most well known, though complaints about it abound. *See* Stephen J. Schulhofer, *Assessing the Federal Sentencing Process: The Problem Is Uniformity, Not Disparity,* 29 Am. Crim. L.Rev. 833, 861–63 (1992) (discussing the Guidelines' inflexibility toward departures); *see also* Paul J. Hofer, *The Reason Behind the Rules: Finding and Using the Philosophy of the Federal Sentencing Guidelines,* 40 Am.Crim. L.Rev. 19, 20 (2003) (discussing the Guidelines' failure to express a coherent philosophy of punishment).

The debate about the best way to devise effective sentences is current and local. The Indiana General Assembly has recently created a Sentencing Policy Study Committee, part of whose mission will be to assure that sentencing laws protect the public and promote fairness and uniformity in sentencing. *See* H.B. 1145, 113th

---

**2.** Indiana trial judges have sometimes undertaken modest efforts at creating equal sentences for offenses and offenders who are similar. *See Wooley v. State,* 716 N.E.2d 919 (Ind.1999) (suggesting caution in applying sentencing grids).

Gen. Assem., 1st Reg. Sess. (Ind.2003), P.L. 140.

## II. The Present Indiana System

The statutory process by which trial judges fashion discrete sentences has been described above.

Appellate review of such sentences proceeds on a basis somewhat different from the methods that apply to other issues that typically are the subject of a criminal appeal. The drafters of the present judicial article of the Indiana Constitution provided in Article 7, section 4: "The Supreme Court shall have, in all appeals of criminal cases, the power to review all questions of law and to review and revise the sentence imposed." Likewise, the constitution authorizes the Court of Appeals to review sentences to the extent provided by Supreme Court rules. Ind. Const. art. VII, § 6.

While Indiana legislative history is frequently sparse, the legislative history of these provisions is available and fairly informative. The framers of the constitutional reform of which section 4 was a part provided explicitly for reference to certain historical materials to assist in interpreting its meaning: "The report of the Judicial Study Commission and the comments to the article contained therein may be consulted by the Court of Justice to determine the underlying reasons, purposes, and policies of this article and may be used as a guide in its construction and application." Ind. Const. art. VII, Schedule (Michie 1978 ed.).

The Commission's report describes the origin and scope of the power to review and revise sentences contained in section 4: "The proposal that the appellate power in criminal cases include the power to review sentences is based on the efficacious use to which that power has been put by the Court of Criminal Appeals in England." Report of the Judicial Study Commission 140 (1967). The English statute establishing the Court of Criminal Appeals set forth that court's power to review and revise sentences as follows:

> On appeal against sentence the Court of Criminal Appeal shall, if they think that a different sentence should have been passed, quash the sentence passed at the trial, and pass such other sentence warranted in law by the verdict (whether more or less severe) in substitution therefore as they think ought to have been passed, and in any other case shall dismiss the appeal. Criminal Appeal Act, 1907, 7 Edward 7, ch. 23 § 4(3).

*Cooper v. State*, 540 N.E.2d 1216, 1218 (Ind.1989).

For much of the period after the voters adopted this provision of the state constitution, this Court constrained review of sentences under a rule that provided that appellate courts could not revise sentences unless "the sentence was manifestly unreasonable in light of the offense and the offender." *See* Ind. Appellate Rule 7(B) (2002). This barrier was so high that it ran the risk of impinging on another constitutional right contained in Article 7, that the Supreme Court's rules shall "provide in all cases an absolute right to one appeal." Ind. Const. art. VII, § 6.

Accordingly, we have taken modest steps to provide more realistic appeal of sentencing issues. The present rule says: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

This formulation places central focus on the role of the trial judge, while reserving for the appellate court the chance to review the matter in a climate more distant

from local clamor. The rule recited above became effective on January 1, 2003, well after Serino was sentenced, but the Court of Appeals usefully applied this standard to the present appeal, as it has recently done in other cases.

### III.  The Merits of Serino's Claim

Two factors can drive the potential for cumulative sentences outside the standard statutory range for a given crime.

■  First, when the perpetrator commits the same offense against two victims, enhanced and consecutive sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person. *See Tobar v. State,* 740 N.E.2d 106 (Ind.2000) (defendant convicted of three murders and sentenced to consecutive sentences).

Second, the prosecutor may elect to charge multiple aspects of the same event as separate counts defined by separate criminal statutes. *See, e.g., Winn v. State,* 748 N.E.2d 352 (Ind.2001) (defendant convicted of rape, criminal deviate conduct, criminal confinement, battery, and criminal recklessness).

Where the charging has been particularly muscular, this may create the theoretical possibility of very long sentences. The only statutory restraint on sentencing under such circumstances appears in Ind. Code § 35–50–1–2(c), which, except for crimes of violence, limits the total sentence for acts arising out of a single episode of criminal conduct to the presumptive sentence for a felony one class higher than the highest felony charged.[3]

■  In imposing the sentence here, the trial court found five aggravating circumstances: 1) Serino's need for correctional or rehabilitative treatment; 2) that he was in a position of trust with the victim and exploited that trust; 3) that Serino was not charged with all crimes committed against the child; 4) that Serino had other pending charges for sex crimes against S.H. and another child; and 5) that a lesser sentence would depreciate the seriousness of the crimes. The trial court found one mitigating circumstance: that Serino had no criminal history. After weighing the aggravators against the mitigators, the court sentenced Serino to an aggregate sentence of 385 years, all executed.

Serino is correct to note that a 385–year sentence is outside the typical range of sentences imposed for child molesting in any reported Indiana decision.

In several factually similar cases—where there was one victim, multiple counts of molestation, and lack of a criminal history—the sentences were revised as being manifestly unreasonable. *See Kien v. State,* 782 N.E.2d 398 (Ind.Ct.App.2003) (consecutive forty-year sentences for three counts of child molestation ordered to be served concurrently); *Haycraft v. State,* 760 N.E.2d 203 (Ind.Ct.App.2001) (190–

---

3. Ind.Code § 35–50–1–2(c) (emphasis added) states:

Except as provided in subsection (d) or (e), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the aggravating and mitigating circumstances in IC 35–38–1–7.1(b) and IC 35–38–1–7.1(c) in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. *However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 and IC 35–50–2–10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.*

year aggregate sentence for eight counts of child molestation, obscenity and contributing to the delinquency of a minor reduced to 150 years); *Walker v. State,* 747 N.E.2d 536 (Ind.2001) (consecutive forty-year sentences for two counts of child molestation ordered to be served concurrently); *see also Bluck v. State,* 716 N.E.2d 507 (Ind.Ct.App.1999) (consecutive sentences totaling seventy-six years remanded for resentencing).

Affirmed sentences for child molestation were dramatically different. *See Pennycuff v. State,* 727 N.E.2d 723 (Ind.Ct.App. 2000)[4] (defendant convicted of three counts of child molestation, one count of sexual misconduct with a minor, and two counts of incest, and was sentenced to twelve years, with two suspended); *Cruz Angeles v. State,* 751 N.E.2d 790 (Ind.Ct. App.2001) (multiple victims involved; defendant convicted of three counts of child molestation and two counts of sexual misconduct with a minor, sentenced to thirty-five years with five suspended).

The trial court's sentencing order is a thoughtful one, and we have given close attention to it, but there is no escaping that the outcome is at the high end of the sentencing spectrum.

Pertinent to the appropriateness of this outcome was substantial uncontested testimony from numerous witnesses speaking to Serino's positive character traits. Serino was described as "very honest and upstanding," "hardworking" and a very "loving," "encouraging," and "good" father. (R. at 1249, 1259, 1270.) Testimony also described Serino as a "spiritual mentor" and having ministered to other inmates while in custody. (R. at 1251, 1259.) There were also letters written supporting Serino. (R. at 911–36, 1268–79, 1281.)

Even the complaining witness and his mother had positive things to say about Serino. (R. at 689, 750.)

█ Furthermore, the victim's own mother was not opposed to a lesser sentence. She is quoted as saying, "We don't want him put away for the rest of his life, but we do want him to pay for what he has done." (App. at 681.) She added, "If he gets the minimum, that is fine with us." *Id.* Yet, in fact, Serino is serving a life sentence, and then some. Although recommendations from a victim's family as to sentencing and testimonies regarding good character do not constitute mitigating or aggravating circumstances of the customary sort; they may properly assist the court in determining the sentence to be imposed. *See Edgecomb v. State,* 673 N.E.2d 1185 (Ind.1996).

In light of the nature of the offense and the character of the offender, we conclude that Serino's sentence should be revised to three consecutive standard terms or 90 years total.

### Conclusion

We affirm the conviction and direct the trial court to rearrange the sentence accordingly.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.

4. This Court reversed the Court of Appeals decision on grounds different from those discussed here. *See Pennycuff v. State,* 745 N.E.2d 804 (Ind.2001) (addressed *Miranda* and ineffective assistance of counsel issues).