## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 04 2015, 9:42 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jeffrey E. Stratman
Aurora, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

George Layton,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

February 4, 2015

Court of Appeals Cause No.
58A05-1406-CR-292

Appeal from the Ohio Circuit Court
The Honorable James D. Humphrey
58C01-1309-FA-004

**Bailey, Judge.**

# Case Summary

[1] George Layton ("Layton") pled guilty to one count of Conspiracy to Commit Dealing Methamphetamine, as a Class B felony,[1] and was sentenced to fourteen years imprisonment, with the term run consecutively to a sixteen-year term of imprisonment in another case. He now appeals, raising for our review the sole issue of whether his sentence is inappropriate.

[2] We affirm.

## Facts and Procedural History

[3] On September 8, 2013, in Aurora, police stopped a vehicle driven by Randy Sewell ("Sewell"); Layton was a passenger in the vehicle. An inventory search of Sewell's vehicle recovered large amounts of methamphetamine precursors, including fifteen-thousand matches, fifteen bottles of iodine tincture, two bottles of hydrogen peroxide, a can of acetone, and plastic tubing. A second search of the vehicle also recovered a box of pseudoephedrine tablets. All of these items are associated with a specific procedure for manufacturing methamphetamine. All of the car's occupants were arrested.

---

[1] Ind. Code §§ 35-48-4-1.1(a) & 35-41-5-2(a). The Indiana General Assembly revised substantial portions of the criminal code, including the offenses involved in this case, effective July 1, 2014. We refer in this case to the substantive provisions of the Indiana Code in effect at the time of Layton's offense.

[4]     An investigation into Layton's activities ensued and revealed that on the day of the arrest, Layton had purchased fifteen bottles of iodine tincture and two bottles of hydrogen peroxide in Dearborn County. Prior to this, from August 16 to September 3, 2013, Layton had purchased a total of 4.8 grams of pseudoephedrine in Lawrenceburg, Dearborn County. On September 7, 2013, the day prior to the arrest, Layton had also attempted to purchase pseudoephedrine in West Virginia.

[5]     Police also obtained a search warrant for Sewell's home. A search of the home discovered evidence of methamphetamine manufacture and use, and statements by the others arrested with Layton indicated that Layton had used methamphetamine in the home.

[6]     On September 10, 2013, alongside his co-defendants, Layton was charged with two counts of Conspiracy to Commit Dealing Methamphetamine, as Class A felonies.[2] On December 9, 2013, the State alleged Layton to be a Habitual Offender.[3]

---

[2] I.C. §§ 35-48-4-1.1 & 35-41-5-2.

[3] I.C. § 35-50-2-8.

[7] On February 6, 2014, Layton and the State entered into a plea agreement under which Layton agreed to plead guilty to Conspiracy to Commit Dealing Methamphetamine, as a Class B felony. The State agreed to dismiss both the two counts of Conspiracy to Commit Dealing Methamphetamine, as Class A felonies, and the Habitual Offender enhancement. Sentencing was left to the trial court's discretion.

[8] On February 7, 2014, the trial court accepted Layton's guilty plea, entered a judgment of conviction against him, and ordered the completion of a presentence investigation.

[9] Prior to entering a guilty plea in the instant case, Layton had entered a guilty plea to Conspiracy to Commit Dealing Methamphetamine in Dearborn County in Cause Number 15D01-1309-FA-0020 ("FA-20"), which plea was related to the transactions that took place in Lawrenceburg. On February 28, 2014, Layton was sentenced to sixteen years imprisonment in FA-20.

[10] On March 21, 2014, a sentencing hearing was conducted in the instant proceeding. The trial court sentenced Layton to fourteen years imprisonment, with his sentence to run consecutively to the sixteen-year term provided for in FA-20.

[11] This appeal ensued.

# Discussion and Decision

[12] Layton contends that his sentence is inappropriate in light of the nature of his offense and his character.

[13] The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008); *Serino v. State*, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. *Cardwell*, 895 N.E.2d at 1225.

[14] Here, Layton was convicted of Conspiracy to Commit Dealing Methamphetamine, as a Class B felony. The sentencing range for a Class B felony runs from six to twenty years, with an advisory term of ten years. I.C. § 35-50-2-5.

[15] Here, Layton was sentenced to fourteen years imprisonment, with that term to run consecutively to the sixteen-year sentence in FA-20. The fourteen year term in this case was the maximum term to which he could have been sentenced under Indiana Code section 35-50-1-2, which governs the length and

application of consecutive terms of imprisonment. The statute provides, in relevant part:

> Except as provided in subsection (d) or (e), the court shall determine whether terms of imprisonment shall be served concurrently or consecutively. The court may consider the:

> (1) aggravating circumstances in IC 35-38-1-7.1(a); and

> (2) mitigating circumstances in IC 35-38-1-7.1(b);

> in making a determination under this subsection. The court may order terms of imprisonment to be served consecutively even if the sentences are not imposed at the same time. However, except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35-50-2-8 and IC 35-50-2-10 to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the advisory sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

I.C. § 35-50-1-2(c).

[16] The State and Layton agreed that Layton's offense in this case arose "out of an episode of criminal conduct" that included Layton's offense in FA-20. *Id.* With the terms of imprisonment in FA-20 and the present case run consecutively, the maximum total term of imprisonment to which Layton could have been sentenced was thirty years: the advisory sentence for a Class A felony. *See* I.C. § 35-50-2-4. Because Layton had already been sentenced to sixteen years imprisonment in FA-20, the maximum sentence he could have received in the instant case with a consecutive sentence was fourteen years

imprisonment. Layton received this maximum term, and contends it was inappropriate.

[17] Layton contends that the trial court had the discretion to sentence him to a concurrent, rather than consecutive term of imprisonment, and its decision to impose a consecutive term of imprisonment was inappropriate, as was the aggregate term of imprisonment imposed.

[18] Turning first to the nature of Layton's offense, Layton engaged in a conspiracy to manufacture methamphetamine. Some of Layton's conduct associated with the conspiracy occurred in Dearborn County in FA-20, and some in Ohio County. The conspiracy itself appears to have run for more than one month, involved travel outside the State of Indiana in an effort to obtain precursors, and implicated a total of five individuals in its efforts. This was not, then, an unexceptional methamphetamine production effort.

[19] We turn now to Layton's character. Layton contends that while he has a substantial criminal history, much of it is part of the distant past. Our review of his criminal history reveals a different picture. Layton did, as he notes, incur a number of his convictions in Ohio in 1983 and earlier; yet that record reflects increasingly severe criminal activity, with his 1983 conviction in Ohio resulting in a sentence of seven to twenty-five years imprisonment. Then, in 2005, Layton committed Burglary in Indiana and received an eight-year sentence; this was followed by another Burglary in Ohio and another eight-year sentence. After this, Layton apparently moved to West Virginia where he was found

guilty of Receiving Stolen Property in 2009. In 2010, he was extradited to Indiana as a result of a parole violation after being arrested and charged in West Virginia for an attempt to operate a methamphetamine laboratory. This was followed in 2013 by the charges in this case and in FA-20. He apparently "took pride in his past history." (App'x at 159.)

[20] Further, we note that at the time of his sentencing, Layton was fifty-eight years old. He admitted to daily use of marijuana since age fifteen, saying that he would "'smoke as much as I can get,'" and also admitted regular use of and addiction to methamphetamine since age forty-eight. (App'x at 159.) Layton has never completed high school or a G.E.D. And while Layton admitted guilt in this case, he also received a substantial benefit from that admission: the dismissal of two Class A felony charges, each carrying a sentencing range of twenty to fifty years imprisonment, *see* I.C. § 35-50-2-4, and a Habitual Offender enhancement.

[21] In light of the nature of Layton's offense and his character, we do not consider inappropriate the trial court's decision to sentence him to the maximum consecutive sentence available in this case.

[22] Affirmed.

Robb, J., and Brown, J., concur.