## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 09 2016, 8:29 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Gregory L. Fumarolo
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jason A. Wilson,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 9, 2016

Court of Appeals Case No.
02A03-1508-CR-1171

Appeal from the Allen Superior Court

The Honorable John F. Surbeck, Jr., Judge

Trial Court Cause No.
02D05-1406-FC-155

**Bailey, Judge.**

# Case Summary

[1] Jason A. Wilson ("Wilson") was convicted of two counts of Carrying a Handgun without a License,[1] and one count of Unlawful Transfer of a Handgun,[2] as Class C felonies, and one count of Driving while Suspended, as a Class A misdemeanor.[3] The trial court sentenced Wilson to an aggregate term of imprisonment of twelve years. He now appeals.

[2] We affirm.

# Issues

[3] Wilson presents two issues for our review, which we restate as:

    I.    Whether there was sufficient evidence to sustain his convictions; and

    II.    Whether his sentence was inappropriate.

# Facts and Procedural History

[4] In 2013 and 2014, Wilson was dating Rai Wood ("Wood"). Wood's step-uncle was Paul Larry ("Larry"). Larry had been convicted of a felony. As a result of

---

[1] Ind. Code §§ 35-47-2-1 & -23 (West 2013) (I.C. § 35-47-2-23 was repealed effective July 1, 2014). Wilson's offenses were committed prior to the effective date of substantial revisions to Indiana's criminal statutes. We refer throughout to the statutes applicable at the time of the offenses.

[2] I.C. § 35-47-2-7.

[3] I.C. § 9-24-19-2.

his felon status, Larry was not permitted to own a firearm or to purchase firearms or ammunition.

[5]     In June 2013, Wilson and Wood were running low on money, and Wilson suggested to Wood that he might try to sell one or more firearms to Larry. Wood advised against it, and mentioned that Larry was a felon and was not permitted to have a gun. Larry had also told Wilson about having served prison time. Nevertheless, Wilson approached Larry about whether he knew someone who might want to purchase a firearm, or whether Larry himself might want to purchase a gun. Larry said he might be interested, but that he couldn't afford to buy a gun at the time and as a felon he was not permitted to have a gun.

[6]     After this conversation, Larry contacted the Fort Wayne Police Department to report what had occurred. Fort Wayne Police directed Larry to the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Larry met with ATF Agent Andrew Badowski ("Agent Badowski"), who asked Larry if he would be willing to work for ATF as a confidential informant.

[7]     After clearing Larry's participation with ATF management, Agent Badowski asked Larry to arrange a controlled buy of a firearm from Wilson. The purchase was arranged by phone on November 20 and 21, 2013, with the phone calls recorded by Agent Badowski.

[8]     On November 21, 2013, the day on which the purchase was set to occur, Agent Badowski inspected a portion of Larry's cluttered garage, out of which Larry

ran a small engine repair shop. Agent Badowski installed a video camera in the garage to record Larry's interactions with Wilson, gave Larry $200 in cash to use for the transaction, and monitored audio from the garage. Wilson arrived at Larry's home and pulled up to the garage in a pickup truck, received $150 from Larry, and gave Larry a .22 revolver and a pill bottle with .22 ammunition.

[9] Several months passed. Sometime in early June 2014, Larry, Wilson, Wood, and another family member were together at a social gathering, and Wilson again suggested that Larry might purchase firearms. Larry contacted Agent Badowski, and the two worked together to arrange another controlled buy from Wilson, to occur on June 9, 2014.

[10] Wilson did not arrive at Larry's home at the agreed-upon time on June 9, 2014, and Larry was unable to contact Wilson. Agent Badowski told Larry to delay the transaction in the event Wilson were to get back in contact. Wilson called Larry later that day, apologized, and said he would come to Larry's home right away. Larry tried to forestall Wilson by telling Wilson that he did not have any money, but Wilson came to Larry's home.

[11] Wilson arrived in an Oldsmobile Cutlass Salon that he had acquired in late May 2014 in trade for the pickup truck he had previously driven; the Oldsmobile was still registered to its prior owner, and still had the prior owner's license plates. When Wilson got out of the car, he opened the trunk and removed a black bag that was ordinarily used to hold a camping tent. Wilson

brought the bag into the garage and withdrew three weapons from it: a 12 gauge shotgun, a 30/30 lever-action rifle with a targeting scope, and a .38 special revolver. There was also ammunition for the firearms in the bag.

[12] Larry again told Wilson that he was unable to pay for the guns, but offered Wilson a cigarette. Larry then said he had money to pay for a pack of cigarettes for Wilson, and told Wilson he would call his sister-in-law, who worked at a nearby gas station. Larry called his sister-in-law, then went into another room and told her that Wilson was present and had firearms, and asked for police to be called.

[13] Fort Wayne Police Officer Barry Pruser ("Officer Pruser"), together with other officers, was dispatched to Larry's home. Upon arriving, Officer Pruser found Larry and Wilson standing near Larry's garage. Officer Pruser already knew Larry, but asked Wilson for identification and performed a pat-down of Wilson's person to check for weapons. Wilson produced a state identification card, stated that his driving privileges were suspended, acknowledged that he had driven to Larry's residence, and stated that he planned to leave the vehicle there and walk home.

[14] At some point during this period, Larry contacted Agent Badowski. Agent Badowski soon arrived at the scene, followed shortly afterward by his supervising agent. Wilson had refused consent to search his vehicle, but based upon department policy and Wilson's admission that he had driven without a license, police conducted an inventory search of the car. Using a key, police

opened the trunk and found the tent bag with firearms and ammunition, as well as a number of electronic devices, including GPS devices and cell phones.

[15] Wilson was subsequently arrested. On June 12, 2014, the State charged Wilson with Carrying a Handgun without a License ("Count I") and Driving while Suspended ("Count II"). On September 2, 2014, the State amended its charging information to add a count for Unlawful Transfer of a Handgun ("Count III") and a second charge of Carrying a Handgun without a License (Count IV").

[16] A jury trial was conducted on July 7 and 8, 2015. At the conclusion of the trial, the jury found Wilson guilty as charged.

[17] A sentencing hearing was conducted on August 3, 2015, during which the trial court entered judgments of conviction against Wilson. At the conclusion of the hearing, the court sentenced Wilson to eight years imprisonment for Count I, one year of imprisonment for Count II, and four years imprisonment each for Counts III and IV. The trial court ordered Counts I and II run concurrent with one another, and Counts III and IV to run concurrent with one another and consecutive to the sentences for Counts I and II. This yielded an aggregate term of imprisonment of twelve years.

[18] This appeal ensued.

# Discussion and Decision

## Sufficiency of the Evidence

[19] Wilson's first contention on appeal is that there was insufficient evidence to sustain his convictions. Our standard of review in such cases is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. *Id.* We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." *Id.* at 147 (quoting *Pickens v. State*, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

[20] Here, Wilson challenges all of his convictions. He acknowledges that there was testimony to support each count, but argues that inferences in favor of his accounting of events at trial were "equally believable" to inferences in favor of the testimony of Larry, Officer Pruser, and Agent Badowski. (Appellant's Br. at 14.) Wilson also draws our attention to matters related to Larry's credibility.

[21] Simply put, Wilson asks that we reweigh evidence and reassess witness credibility. We decline the invitation, and conclude that there was sufficient evidence to sustain his convictions.

## Sentencing

[22] Wilson also challenges his sentence as inappropriate under Appellate Rule 7(B).

[23] The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008); *Serino v. State*, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. *Cardwell*, 895 N.E.2d at 1225.

[24] Here, Wilson was convicted of three Class C felonies and a Class A misdemeanor. For each Class C felony, he faced a term of imprisonment ranging from two to eight years, with an advisory term of four years. *See* I.C. § 35-50-2-6. For the Class A misdemeanor, Wilson faced a sentence of up to one year. *See* I.C. § 35-50-3-2. The trial court imposed an aggregate sentence of twelve years, running Counts I and II concurrent with one another for a total of eight years, Counts III and IV concurrent with one another for a total of four years, and Counts I and II consecutive to Counts III and IV.

[25] As to the nature of Wilson's offenses, he twice knowingly sold or attempted to sell firearms to an individual whom he knew was not permitted to own a firearm. Wilson himself was not permitted to own a firearm, since he had a

prior felony conviction. And, as Officer Pruser testified, Wilson admitted that his driving privileges were suspended when police arrived at Larry's home on June 9, 2014. None of this makes Wilson's offenses remarkable.

Turning to Wilson's character, we note that he has two prior felony convictions and seven prior misdemeanor convictions, with criminal adjudications beginning in 2000 in Illinois. Among these are felony convictions for Intimidation and Strangulation. Wilson was afforded probation and parole on various occasions, but failed to comply with the provisions of those programs. Further, by his own admission, Wilson left Allen County while on bond during the pendency of trial proceedings and fled to Lake County, from which he was subsequently extradited to stand trial in this case. Wilson has a limited employment history and lacks a GED or high school diploma, and admitted to use of marijuana, synthetic marijuana, and illegal use of prescription medications. He has some history of treatment for mental health issues, primarily for a six-month period in 2012 or 2013.

In light of the nature of Wilson's offenses and his character, we cannot conclude that an aggregate sentence of twelve years was inappropriate in light of the nature of his offense and his character.

# Conclusion

There was sufficient evidence to sustain Wilson's convictions, and his sentence was not inappropriate.

Affirmed.

Vaidik, C.J., and Crone, J., concur.