## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 15 2016, 9:51 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael G. Moore
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dolphus Ballinger,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 15, 2016<br><br>Court of Appeals Case No.<br>49A02-1512-CR-2122<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Lisa Borges, Judge<br><br>Trial Court Cause No.<br>49G04-1408-FB-38651 |

**Bailey, Judge.**

## Case Summary

[1] Dolphus Ballinger ("Ballinger") was convicted of Rape, as a Class B felony.[1] He now appeals, raising for our review whether his sixteen-year sentence is inappropriate under Appellate Rule 7(B).

[2] We affirm.

# Facts and Procedural History

[3] Ballinger had, at the time of the instant offense, been stepfather to S.D. for much of her childhood and into adulthood. On October 18, 2013, Ballinger called S.D. and told her that a speeding ticket she had received might have resulted in a warrant for her arrest. S.D. had paid the ticket, but nevertheless was worried by the news.

[4] Later that day, Ballinger came to S.D.'s apartment in Indianapolis. S.D. let Ballinger into the apartment, and the two talked for about forty-five minutes to an hour about the ticket and possible warrant. Ballinger then left S.D.'s apartment.

[5] About a minute later, Ballinger again knocked on S.D.'s door. When S.D. opened the door, Ballinger told her, "I want to try something," and pushed her onto a spare bed in her apartment. (Tr. at 18.) Ballinger then removed S.D.'s shorts and began "wiping his beard across [S.D.'s] vagina." (Tr. at 18.)

---

[1] Ind. Code § 35-42-4-1(a)(1). We refer throughout to the criminal offenses as defined at the time of Ballinger's offense, which was committed prior to the effective date of recent revisions to Indiana's criminal statutes.

Ballinger then engaged in vaginal intercourse with S.D., who tried to push Ballinger off of her and said "no." (Tr. at 19.) Ballinger told S.D. that if she continued to resist, he would ejaculate in her vagina and impregnate her; S.D. then stopped resisting Ballinger.

[6] Ballinger eventually ceased this activity and sat down on the bed next to S.D. After placing his hand on S.D.'s chest, Ballinger told her that she wasn't nervous or scared, and asked S.D. whether she was angry with him. She said she was because he was her stepfather and was "not supposed to do that." (Tr. at 20.) Ballinger told S.D. that she should apologize to him for not loving him the way he loved her. Ballinger then put a cell phone in S.D.'s hand and said that if she wanted to hurt him, she should call the police. He then got a knife from the kitchen, put it in S.D.'s hand, and said that if she wanted to hurt him, she should cut his throat and stab him in the heart. Ballinger then told S.D. that "after all the stuff he's done for [her], he deserved this." (Tr. at 21.) Eventually, Ballinger left the apartment.

[7] S.D. delayed telling her mother or police about the incident because her mother was happy and S.D. did not want to break up the family. Shortly before traveling to start U.S. Navy boot camp, S.D. told her mother about the events of October 18, 2013. S.D.'s mother confronted Ballinger about his conduct several times, and S.D. and her mother together also confronted Ballinger during a phone call. At first he denied the conduct, but eventually he acknowledged it on several occasions, including once in the office of the pastor of the family's church, and once on a phone call that S.D.'s mother recorded.

During a leave period that S.D. spent in Indianapolis in May and June 2014, after learning that Ballinger had not admitted his conduct to other family members, S.D. contacted police to report the October 18, 2013 incident.

On August 11, 2014, the State charged Ballinger with one count of Rape, as a Class B felony, and one count of Criminal Confinement, as a Class D felony.[2] A jury trial was conducted on October 13, 2015. At the trial's conclusion, the jury found Ballinger guilty as charged.

On November 18, 2015, a sentencing hearing was conducted. During the sentencing hearing, the trial court entered a judgment of conviction against Ballinger for Rape, but vacated on double jeopardy grounds the jury's guilty finding as to the charge of Criminal Confinement. At the conclusion of the hearing, the trial court sentenced Ballinger to sixteen years imprisonment, with three years suspended to probation.

This appeal ensued.

# Discussion and Decision

Ballinger's sole contention on appeal is that his sentence is inappropriate under Appellate Rule 7(B).

---

[2] I.C. § 35-42-3-3(a)(1).

[12] The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008); *Serino v. State*, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. *Cardwell*, 895 N.E.2d at 1225.

[13] Ballinger was convicted of Rape, as a Class B felony. As a result of his conviction, he faced a sentencing range of between six and twenty years imprisonment, with an advisory term of ten years. I.C. § 35-50-2-5(a). Ballinger was sentenced to a sixteen-year term of imprisonment, with three years of that term suspended to probation. He requests that this court revise his sentence downward to the advisory term of ten years.[3]

---

[3] Ballinger's brief refers to the "presumptive sentence." (Appellant's Br. at 9.) We remind counsel that presumptive sentences were replaced by the advisory sentencing scheme in the wake of the U.S. Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296 (2004). *See Gutermuth v. State*, 868 N.E.2d 427, 430-31 (Ind. 2007) (recognizing the effect of *Blakely* in Indiana pursuant to *Smylie v. State*, 823 N.E.2d 679 (Ind. 2005)).

[14] With respect to the nature of the offense, Ballinger argues that we should revise his sentence downward because his was not a notably violent rape. The circumstances of this crime suggest that an above-advisory sentence is not inappropriate. Ballinger had the opportunity to commit his offense only because of the position of trust he held with S.D. as her stepfather, and he used that access to commit the offense. Ballinger compelled S.D. to cease resisting him by threatening S.D. with the prospect that he would impregnate her if she did not stop her resistance. Ballinger then engaged in what the State characterizes as "passive aggressive" behavior, providing opportunities for S.D. to "hurt" him, saying that S.D. owed him sex because of all he had done for her, and accusing S.D. of not loving him in the same way he loved her. All of this supports an aggravated sentence.

[15] With respect to Ballinger's character, his pre-sentencing investigation reveals only a single misdemeanor conviction. However, Ballinger was arrested on other occasions; several of these arrests involved some form of violent conduct. Ballinger refused to express remorse after having admitted to his ex-wife, S.D.'s mother, that he had raped S.D. He had a relatively stable employment history prior to his arrest, served in the U.S. Navy, and attended church, and together with S.D.'s mother helped raise a large family that included S.D. However, when S.D. made her accusations, Ballinger engaged in conduct that drove the family apart, causing S.D.'s mother financial and personal harm—even after having admitted his conduct to S.D.'s mother on several occasions. Thus, in

total his character is at best unremarkable, affected notably by his refusal to express remorse for his crime and his conduct in the wake of S.D.'s accusations.

[16]     In light of the nature of the offense and his character, we cannot conclude that Ballinger's sentence is inappropriate.

[17]     Affirmed.

Bradford, J., and Altice, J., concur.