## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 09 2017, 8:04 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer D. Wilson Reagan
Wilson & Wilson
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ira Steven Link,

*Appellant-Defendant*,

v.

State of Indiana,

*Appellee-Plaintiff*.

March 9, 2017

Court of Appeals Case No.
41A01-1605-CR-1003

Appeal from the Johnson Superior
Court

The Honorable Lance D. Hamner,
Judge

Trial Court Cause No.
41D03-1505-F3-20

**Brown, Judge.**

[1] Ira Link appeals his sentences for two counts of rape as level 3 felonies, burglary as a level 3 felony, criminal confinement as a level 5 felony, and being a repeat sexual offender. Link raises one issue which we revise and restate as whether his sentence is inappropriate in light of the nature of the offenses and the character of the offender. We affirm.

## Facts and Procedural History

[2] On May 1, 2015, Link noticed a lawnmower and open garage door of a home in Greenwood, approached the residence and knocked on the door, and then went toward the garage. N.W., who was seventy-six years old and lived alone, entered the garage, asked Link why he was there, and Link panicked and grabbed N.W. as she attempted to run. Link placed his hand over N.W.'s mouth as she tried to yell for help, and a struggle ensued where N.W. was knocked to the ground multiple times, knocked over a bicycle, and was significantly injured. Link pushed her into her house, demanded money and jewelry, and she gave him approximately twenty dollars and stated that she did not have valuable jewelry. Link then directed her to take him to her bedroom so that he could inspect her jewelry, and there she gave him an additional twenty dollars. He then ordered N.W. to perform oral sex on him. After about five minutes, he ordered her to disrobe, climbed on top of her, and had sexual intercourse. He then washed N.W.'s vagina with liquid soap and ordered her to stay in the bedroom for five to ten minutes while left the residence.

[3]     The next day, Link's mother called 911 and stated that Link told her he "had raped a woman in Greenwood" and was now threatening to hang himself. Appellant's Appendix Vol. V at 18. Officers responded and arrested Link.

[4]     On May 7, 2015, the State charged him with two counts of rape as level 3 felonies, burglary as a level 3 felony, criminal confinement as a level 5 felony, and being a repeat sexual offender based upon convictions for child molesting as class A and class B felonies in 1993. On August 25, 2015, the court granted the State's motion to amend the burglary charge to elevate it to a level 1 felony. After twice continuing the commencement of a jury trial, at the final pretrial conference the State and Link announced they had entered into a plea agreement whereby Link would enter an open guilty plea to the original charges, including burglary as a level 3 felony. Link pled guilty pursuant to the plea agreement.

[5]     On April 18, 2016, the court held a sentencing hearing at which Link admitted that his crimes were "horrific" and that he was "truly sorry" for N.W. Transcript at 17-18. He claimed that he was "high on pills" when he committed the crimes. *Id.* at 26. He submitted a sentencing memorandum detailing his difficult childhood and his own history of being sexually abused. The State presented a victim's impact statement from N.W.'s family telling how Link's crimes violated the sanctity of N.W.'s house, which she had purchased forty years earlier with her now-deceased husband. It noted that N.W. suffered pain to the point that she could barely walk following the attack and could not be left alone for months. The statement also noted that "[o]ne of the hardest

parts of this whole ordeal" for N.W. was the lengthy court proceedings before Link decided to plead guilty, in which "we lived on the dread of a trial hanging over us and the horror of [N.W.] having to relive all that happened to her" before he pled guilty "[a]t the last minute." *Id.* at 37.

[6] The court identified as mitigators Link's decision to plead guilty, that he expressed remorse, and his troubled upbringing. It found as an aggravator that Link was on probation at the time of the present crime, which the court deemed "one of the strongest aggravators that [it] can imagine," and it noted regarding the horrific nature of the new crime that it could not "think of a worse way to violate probation than that." *Id.* at 60-61. It also identified as aggravators the age of N.W., the severe injuries to her, and the "incalculable" impact on her. *Id.* at 62. Although the court did not identify Link's criminal history as an aggravator, it observed that his history was limited but "horrific" in nature. *Id.* at 59. The court found that the aggravators "overwhelmingly" outweighed the mitigators. *Id.* at 62. It sentenced Link to sixteen years for each of the two counts of rape, sixteen years for burglary, and six years for criminal confinement, enhanced Link's sentence by nine years for being a repeat sexual offender, and ordered that the sentences be served consecutively in the Department of Correction. Thus, Link received an aggregate sentence of sixty-three years.

## *Discussion*

[7] The issue is whether Link's sentence is inappropriate in light of the nature of the offenses and his character. Ind. Appellate Rule 7(B) provides that we "may

revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Relief is available if, after due consideration of the trial court's sentencing decision, this court finds that in our independent judgment, the sentence is inappropriate in light of the nature of the offense and the character of the offender. *See Hines v. State*, 30 N.E.3d 1216, 1225 (Ind. 2015). "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference." *Id.* (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). "[A]ppellate review should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Cardwell*, 895 N.E.2d at 1225. "[W]hether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Hines*, 30 N.E.3d at 1225 (quoting *Cardwell*, 895 N.E.2d at 1224).

[8] Link argues that this court should focus primarily on the length of his aggregate sentence and how it was ordered to be served. He asserts that he received the maximum sentence for each of the convictions except for the repeat sexual offender enhancement, for which he received a sentence one year shy of the

maximum, noting further that the court ordered each of the convictions to be served consecutively. He argues that an enhanced, consecutive sentence is not necessary "to vindicate the fact that there were separate harms and separate acts against more than one person" and cites to *Serino v. State*, 798 N.E.2d 852 (Ind. 2003), noting that the charging information in this case was "particularly muscular." Appellant's Brief at 18. He maintains that "[i]t is contrary to public policy to discourage a defendant from sparing his victim the horror of testifying, among other victim stressors, by imposing the maximum sentence allowable under the law against him when he enters into an open plea." *Id.* at 19. The State argues that Link's sentence is appropriate due to the egregious circumstances of the offenses and his poor character.[1]

[9] Our review of the nature of the offenses reveals that Link approached N.W.'s home and grabbed her after she confronted him in her garage. He covered her mouth and knocked her to the ground multiple times, causing her significant injuries. He pushed N.W. into her home, demanded money and jewelry, and ordered her to take him to her bedroom for him to examine her jewelry. Once in the bedroom, he first made N.W. perform oral sex on him before forcing her to disrobe and engage in sexual intercourse with him. After sexually assaulting N.W. both by forcing her to perform oral sex and engaging in sexual

---

[1] The State also asserts that Link waived his right to appeal his sentence as part of the plea agreement. We observe that, at the guilty plea hearing, the provision in the plea agreement discussing waiver of Link's right to appeal his sentence was not discussed and, indeed, when the court asked Link if he was "reserving the right to appeal [his] sentence," Link responded: "Yes sir." Transcript at 4. In any event we decide this case on the merits.

intercourse, he washed her vagina and ordered her to remain in her bedroom for five or ten minutes while he left the scene. Following the incident, N.W. was barely able to walk and could not be left alone for months. The family detailed how the incident violated the sanctity of N.W.'s house, which she has owned for over forty years and purchased with her husband who is now deceased. We do not disagree with Link's characterization of the offenses as horrific.

[10] Our review of the character of the offender reveals that Link pled guilty and expressed remorse at his sentencing hearing. However, we note that Link waited until the eve of trial to change his plea to guilty and that he received a benefit for pleading guilty when the State agreed to allow him to plead guilty to burglary as a level 3 felony rather than as a level 1 felony. We further note that his decision to plead guilty was a pragmatic decision where there was ample evidence of his guilt, including multiple confessions both to his mother and the police.

[11] Link was on probation at the time of the offenses stemming from convictions in 1993 for child molesting as class A and class B felonies, in which the facts involved Link molesting his then-wife's nine-year-old half-sister through threats including with a knife. He had been released to probation in July of 2014, less than a year before he committed the crimes against N.W. He testified that he was "high on pills" during the offenses and reported that he is addicted to Benadryl. Transcript at 26. The presentence investigation report states that the

Indiana Risk Assessment System places Link in the high risk category to reoffend.

[12] To the extent that Link asserts that his sentence in inappropriate in light of *Serino*, we note that the defendant in that case was convicted of twenty-six counts of child molesting and sexual misconduct involving a single victim over the course of three years, and the trial court sentenced him to 385 years in jail. 798 N.E.2d at 853. The Indiana Supreme Court revised Serino's sentence to ninety years based in part on "substantial uncontested testimony from numerous witnesses speaking to Serino's positive character traits." *Id.* at 858. The Court also observed that "[e]ven the complaining witness and his mother had positive things to say about Serino." *Id.* It further noted that the "385-year sentence is outside the typical range of sentences imposed for child molesting in any reported Indiana decision" and that Serino did not have any criminal history. *Id.* at 857. We find the Court's analysis in *Serino* distinguishable.

[13] Also, we find Link's assertion that his sentence will dissuade others from entering into open guilty pleas unavailing. As noted he received a benefit for pleading guilty when the State agreed to allow him to plead guilty to burglary as a level 3 felony for which the sentencing range is between three and sixteen years, rather than as a level 1 felony which carries with it the sentencing range of between twenty and forty years.

[14] After due consideration, we conclude that Link has not met his burden of establishing that his aggregate sentence of sixty-three years is inappropriate in light of the nature of the offense and his character.

## *Conclusion*

[15] For the foregoing reasons, we affirm Link's sentence for two counts of rape as level 3 felonies, burglary as a level 3 felony, criminal confinement as a level 5 felony, and being a repeat sexual offender.

[16] Affirmed.

Vaidik, C.J., and Bradford, J., concur.