## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 26 2017, 10:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Scott H. Duerring
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Marcus J. Gary,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 26, 2017

Court of Appeals Case No.
20A03-1611-CR-2739

Appeal from the Elkhart Circuit Court

The Honorable Terry C. Shewmaker, Judge

Trial Court Cause No.
20C01-1604-MR-3

**Bailey, Judge.**

# Case Summary

[1] Marcus J. Gary ("Gary") was convicted of Murder, a Felony,[1] and sentenced to a sixty-four-year prison term. He now appeals, raising for our review the sole issue of whether his sentence is inappropriate under Appellate Rule 7(B).

[2] We affirm.

# Facts and Procedural History

[3] On the evening of April 17, 2016, Gary was socializing with his brother, James Gary ("James"), and two of James's friends, Lavelle Evans ("Evans") and Anon Burnett ("Burnett"). The four men were sitting on a porch outside of James's apartment in Elkhart.

[4] James routinely openly carried a 9mm semiautomatic pistol in a holster that he wore at his side, and was wearing the holstered gun that day. Gary routinely carried a bag with clothes and a .44 magnum revolver. Gary had the bag with him on April 17, 2016, and the revolver was in his bag that day.

[5] At some point that evening, Gary, whom James and Anon observed to be acting strangely, attempted to take the 9mm pistol from James's holster. James quickly removed the gun from Gary's reach, re-holstered the gun, and told Gary to leave. Gary agreed to leave and called someone to ask for a ride. After

---

[1] Ind. Code § 35-42-1-1.

this, James, whose infant child was inside the apartment, entered the apartment to prepare a bottle for the child.

[6] While James was inside the apartment, Gary drew his revolver from his bag and, without any apparent warning, fired his gun at Evans, striking Evans in the head. Burnett, who had been looking away from the two men and towards a party across the street, felt the disruption of air from the firing of the gun. Burnett turned and saw Evans fall from the chair in which he had been sitting, and saw Gary running away. James rushed from the apartment, called 911, and attempted to pursue Gary, who was running in the direction of James's and Gary's mother's home, but Gary escaped.

[7] Evans died at the scene.

[8] Around midnight, Gary appeared at the home of a cousin, Wayne Barham ("Barham"), and the two men used marijuana together. At some point during Gary's visit, he admitted to Barham that he had shot Evans.

[9] On the morning of April 18, 2016, Gary contacted his sometime-girlfriend, Meghan Zimmerman ("Zimmerman"), and asked her to pick him up from Barham's apartment. Zimmerman did so and transported Gary back to her apartment. Zimmerman knew that something had happened at James's home, and eventually persuaded Gary to allow her to take him to the Elkhart Police Department. Gary agreed to Zimmerman's request. Zimmerman took Gary to the police station and, after being interviewed at the police station, Gary was arrested.

[10] On April 25, 2016, the State charged Gary with Murder.

[11] Gary waived his right to a jury trial, and the case proceeded to a bench trial on August 29 and 30, 2016. At the end of the trial, the court took the matter under advisement. On September 23, 2016, the trial court found Gary guilty as charged and entered a judgment of conviction against him.

[12] On October 13, 2016, a sentencing hearing was conducted. At the close of the hearing, the trial court reiterated its entry of judgment against Gary, and sentenced him to sixty-four years imprisonment, with recommendations that Gary receive substance abuse and mental health treatment while incarcerated.

[13] This appeal ensued.

# Discussion and Decision

[14] Gary raises for our review the sole question of whether the sixty-four-year sentence that the trial court imposed upon him was inappropriate. The authority granted to this Court by Article 7, section 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be

inappropriate in light of the nature of the offense and the character of the offender. *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008); *Serino v. State*, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. *Cardwell*, 895 N.E.2d at 1225.

[15] Gary was convicted of Murder, a Felony. The sentencing range for murder runs from forty-five to sixty-five years imprisonment, with an advisory term of fifty-five years. I.C. § 35-50-2-3(a). Gary was sentenced to a term of sixty-four years, one year below the maximum term of imprisonment, and in his appeal requests that we conclude that his sentence was inappropriate and asks that we revise his sentence downward to the advisory term of fifty-five years.

[16] Looking first to the nature of the offense, our review of the record discloses that Gary was present at a social gathering at his brother James's home. Shortly before committing the offense of Murder, Gary attempted to take James's gun. When told to leave, Gary made a phone call, but remained at James's home. While James was inside tending to his infant child, Gary took out his own gun and shot Evans in the head. Burnett, a friend of James and Evans, was close enough to feel the disruption of air caused by the gunshot although at the moment his attention was directed toward an outdoor party across the street from the scene. Gary then fled and, later that night, consumed marijuana and admitted to having shot Evans.

[17] As a result of the shooting, Evans, with whom Gary had no prior conflict or quarrel, died; the shooting, then, had no apparent motivation. Moreover, the

shooting resulted in Burnett, who already suffered from post-traumatic stress, experiencing increased levels of trauma as a result of the shooting. Gary's use of a firearm posed a risk to numerous other individuals present that day, as well.

[18] We turn now to the nature of Gary's character. Our review of the record discloses that Gary did not finish high school, and experienced disciplinary problems while enrolled in school. As a minor, Gary had extensive interactions with the juvenile justice system, including two delinquency adjudications for Battery, and one delinquency adjudication for Disorderly Conduct. Gary's final contact with the juvenile system resulted in a case being waived into adult court jurisdiction, and he was ultimately convicted of Robbery in that case, was incarcerated, and failed to successfully complete probation. He subsequently committed felony-level offenses of Receiving Stolen Property and Criminal Recklessness, and was convicted of misdemeanor-level offenses of Resisting Law Enforcement, Illegal Possession of an Alcoholic Beverage, Battery, False Informing, and Unlawful Gambling. In numerous of these cases, his probation was revoked.

[19] During the presentencing investigation, Gary admitted to having had a prior affiliation with a gang. He was last employed in 2014. Gary acknowledged that he had been diagnosed as schizophrenic in 2012, but had discontinued medication. Gary further admitted to daily use of marijuana, beginning at age fifteen. He also admitted to use of methamphetamine beginning in 2012, and stated that the last day he used methamphetamine was the day of his arrest—

one day after the murder of Evans. Gary was afforded addiction treatment while incarcerated in 2012, but apparently did not benefit from that treatment.

[20] In Gary's favor, he voluntarily surrendered to police. Yet that by itself does not persuade us that the nature of his offense and his character are such that the trial court's imposition of a sentence near the statutory maximum was inappropriate.

[21] Affirmed.

Vaidik, C.J., and Robb, J., concur.