## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 22 2021, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

James H. Voyles, Jr.
Jennifer M. Lukemeyer
Voyles Vaiana Lukemeyer Baldwin &
Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Jodi Kathryn Stein
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jonathon Cavins,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 22, 2021

Court of Appeals Case No.
20A-CR-1213

Appeal from the Boone Superior
Court

The Hon. Lori Schein, Judge

Trial Court Cause No.
06C01-1902-F4-396

**Bradford, Chief Judge.**

# Case Summary

[1] Between July of 2018 and February of 2019, Dr. Jonathon Cavins saw Z.B., B.H., J.S., S.H., and A.M., all boys between the ages of twelve and sixteen, for physical examinations at his Lebanon practice. During the examinations, Cavins stroked the penises of all five boys and introduced condoms into their discussions, placing or attempting to place them on four of the boys' penises. The State eventually charged Cavins with two counts of Level 4 felony child molesting, one count of Level 5 felony sexual misconduct with a minor, and two counts of Level 6 felony child seduction. A jury convicted Cavins as charged, and the trial court sentenced him to an aggregate term of twenty-three years of incarceration with four years suspended to probation. Cavins contends that the State failed to introduce evidence sufficient to sustain any of his convictions, the trial court abused its discretion in sentencing him, and his sentence is inappropriately harsh. Because we disagree, we affirm.

# Facts and Procedural History

[2] Beginning in 2008, Cavins was a pediatrician practicing medicine at Witham Health Services in Lebanon, and the practice group to which Cavins belonged used the American Academy of Pediatrics ("AAP") recommended practice to guide the physicians through the various health stages of children. Part of the AAP recommendation practice was to discuss various topics with adolescents twelve and older who were near to or entering puberty, which included drugs and alcohol, puberty, abuse, sexually-transmitted diseases, safe sex, and condoms. While it was acceptable by AAP standards to discuss condoms and

even demonstrate the proper use of a condom on an object, such as a banana, there was no medical reason to ever put a condom on a patient during a medical examination nor to ever stroke a patient's penis in order to induce an erection.

[3]     In July of 2018, Cavins saw thirteen-year-old Z.B. for a physical examination. After Cavins performed the standard physical examination with Z.B.'s mother in the room, Cavins took Z.B. to a different room, asked him to fill out a depression-screening form, and told him to undress and put on a gown. Cavins returned a short time later, and Cavins asked Z.B. if he was sexually active, to which Z.B. replied that he was not. Cavins left the examination room, retrieved a condom, and returned. Cavins opened the condom package and started to rub Z.B.'s penis by moving his hand back and forth in a symmetrical fashion several times. Cavins put the condom on Z.B.'s penis, but took it off and threw it away when Z.B. did not have an erection. Z.B. reported the incident to his mother that day.

[4]     In the fall of 2018, Cavins saw sixteen-year-old B.H. for a physical examination. Cavins had placed a condom on B.H. during an earlier visit but had not stroked B.H.'s penis at that time. When alone with Cavins, B.H. asked Cavins to measure his penis because he wanted to know if his penis was small. Cavins used a cloth measuring tape to hold B.H.'s penis and measure it. Afterward, Cavins started to stroke B.H.'s penis with three fingers; Cavins commented that B.H.'s penis was not getting hard. B.H. tried to change the

subject, but Cavins continued to stroke his penis. B.H. pulled away. Cavins was not wearing medical gloves.

[5]     On December 7, 2018, Cavins saw fifteen-year-old J.S. as a new patient for a physical examination. After completing the initial new patient intake, Cavins took J.S. to a different room, left him with a depression-screening form, and told him to undress and put on a gown. Cavins asked J.S. if he was sexually active, to which J.S. replied that he was not. Cavins asked J.S. if he knew what a condom was, and J.S. said yes. Cavins pulled a condom out of his pocket and opened the package. Cavins started to stroke J.S.'s penis with his hand, with his thumb on top and two fingers on the bottom. Cavins attempted to put the condom on J.S.'s penis but it fell off because his penis was not erect. The situation felt awkward and "nasty" to J.S. Tr. Vol. V p. 26. Cavins told J.S. that he should wipe off his penis after using a condom to avoid "red penis." Tr. Vol. V p. 27. Cavins used a baby wipe and wiped off J.S.'s penis by holding the head of the penis with one hand and wiping the penis off with the other hand. Cavins did not wear gloves during the medical examination. J.S. told his parents about the experience when they left the office, but J.S.'s father decided not to report the incident because he trusted Cavins and had faith that nothing untoward had happened.

[6]     On January 9, 2019, Cavins saw sixteen-year-old S.H. for a physical examination. After Cavins performed the standard physical examination with S.H.'s mother in the room, Cavins took S.H. to a different room, asked him to fill out a depression-screening form, and to undress and put on a gown. Cavins

returned a short time later, reviewed S.H.'s answers on the form, and performed the rest of the physical examination, which included a hernia examination and a check for discharge from S.H.'s penis. Cavins asked S.H. if he was sexually active, to which S.H. replied that he was not. As Cavins manipulated S.H.'s testicles, Cavins began talking about condoms and asked S.H. if he wanted to see one. S.H. said yes, so Cavins retrieved one from the cabinet above the sink, opened the package, and handed it to S.H. When Cavins asked, S.H. told Cavins that he did not want to put it on; Cavins, however, held S.H.'s testicles and started to stroke S.H.'s penis with his hand around the penis in a circle. Cavins tried to put the condom on S.H.'s penis, but S.H. "smacked" Cavins's hand away. Tr. Vol. IV p. 22. Cavins said, "okay," placed the condom on S.H.'s finger, and stroked it with his whole hand wrapped around S.H.'s finger. Tr. Vol. IV p. 22. Cavins explained what the condom was for and how to use and dispose of it. Cavins also advised S.H. that his penis would be sticky so to gently clean it off. Cavins told S.H. to "keep it between us." Tr. Vol. IV p. 46. Cavins did not wear gloves during the medical examination. S.H. felt uncomfortable and reported the incident to his mother. S.H.'s parents decided to give Cavins the benefit of the doubt and did not report the incident.

[7] On February 4, 2019, Cavins saw twelve-year-old A.M. for a physical. After Cavins performed the standard physical examination with A.M.'s family in the room, Cavins took A.M. to a different room and asked him to fill out a depression-screening form, undress, and put on a gown. When Cavins returned, A.M. declined Cavins's invitation to see a condom, telling Cavins that

he was not ready.  Cavins, however, took a condom from his pocket, handed the package to A.M., and told him to open it.  Cavins did not explain what a condom was for, and A.M. had never seen one before.  A.M. opened the package as Cavins began to stroke A.M.'s penis with his hand.  Cavins took the condom from A.M.'s hand, rolled it onto A.M.'s penis, and continued to stroke A.M.'s penis to an erection.  Cavins told A.M. that he did not have to tell his parents about what was occurring.  Cavins watched A.M.'s penis and commented about "[j]erking off[,]" a term with which A.M. was not familiar. Tr. Vol. III p. 132.  A.M. felt very awkward and did not like what Cavins was doing.  Cavins took the condom off, wrapped it into a tissue, and threw it into the trash, advising AM. never to throw a condom into a toilet.  Cavins also told A.M. that he had to clean his penis after wearing a condom and wiped off A.M.'s penis with a wet paper towel.  Cavins did not wear gloves during the examination.

[8] A.M. reported the incident to his mother that day and his family reported the incident to police on February 7, 2019.  Following A.M.'s forensic interview, Lebanon Police Detective Major Tony Bayles secured a search warrant to search the pediatric unit for condoms and condom wrappers.  A partially used box of condoms was found in the top drawer of Cavins's desk in his personal office.

[9] On February 22, 2019, Cavins was charged with Level 4 felony child molesting and arrested that day.  By 6:00 p.m., Detective Bayles had been contacted by the families of J.S. and Z.B., who reported similar conduct.  Following the

filing of additional charges relating to J.S. and Z.B., the families of S.H. and B.H. also came forward. None of the five boys knew each other, lived in the same town, or attended school with any of the others. On January 28, 2020, the State filed a reordered charging information which contained the following charges:

> Count I—Level 4 felony child molesting [A.M.];
> Count II—Level 4 felony child molesting [Z.B.];
> Count III—Level 5 felony sexual misconduct with a minor [J.S.];
> Count IV—Level 6 felony child seduction [S.H.]; and,
> Count V—Level 6 felony child seduction [B.H.].

[10] Cavins's jury trial began on February 10, 2020, during which all five boys testified against him regarding his acts of stroking and placing or attempting to place condoms on their penises. Cavins testified on his own behalf regarding his medical examinations of the five boys and admitted that he had introduced condoms into his sexual-activity discussions. Cavins, however, denied ever putting a condom on any of the boys or stroking their penises and admitted that there would be no medical reason to do either act. The jury found Cavins guilty as charged.

[11] At the sentencing hearing on June 4, 2020, the trial court gave "considerable weight" to Cavins's violation of his position of trust as the boys' physician as an aggravating circumstance and found Cavins's lack of criminal history to have minimal mitigating weight. Tr. Vol. VI p. 94. The trial court sentenced Cavins to nine years (seven years executed and two years suspended to probation) for Counts I and II, three years executed for Count III, and to one year executed

for Counts IV and V, Level 6 felony child seduction. The trial court ordered Cavins to serve the sentences consecutively due to multiple victims, which resulted in an aggregate sentence of twenty-three years of incarceration with four years suspended to probation.

# Discussion and Decision

## I. Whether the State Produced Sufficient Evidence to Sustain Cavins's Convictions

[12] When a defendant challenges the sufficiency of the evidence used to convict him of a crime, we consider only the probative evidence and reasonable inferences arising therefrom supporting the conviction. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm a conviction unless no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. *Young v. State*, 973 N.E.2d 1225, 1226 (Ind. Ct. App. 2012), *trans. denied*. Put another way, reversal of a defendant's conviction "is appropriate only when a reasonable trier of fact would not be able to form inferences as to each material element of the offense." *Purvis v. State*, 87 N.E.3d 1119, 1124 (Ind. Ct. App. 2017), *aff'd on reh'g*, 2018 WL 522813 (memorandum decision on rehearing). This standard of review does not permit us to reweigh the evidence or allow us to judge the credibility of the witnesses. *McCallister v. State*, 91 N.E.3d 554, 558 (Ind. 2018). Where there is conflicting evidence in the record, we consider the evidence in the light most favorable to the judgment. *Drane*, 867 N.E.2d at 146.

[13]     Cavins was convicted of two counts of Level 4 felony child molesting, one count of Level 5 felony sexual misconduct with a minor, and two counts of Level 6 felony child seduction, crimes that all require proof of an adult touching a minor with intent to arouse or satisfy the sexual desires of either the minor or the older person. *See* Ind. Code §§ 35-42-4-3(b), -9(b)(1), -7(n), -7(q)(1). Cavins contends that the State produced insufficient proof to establish this for any of his five convictions, insisting that he never touched the boys' penises after introducing the condom and that his touching of the five boys was therefore within the bounds of acceptable medical practice. As for Cavins's claim at trial that he had never touched any of the boys' penises, all testified to the contrary, and the jury was entitled to credit the boys' testimony on this point and reject Cavins's, which it did. *See, e.g.*, *McCallister*, 91 N.E.3d at 558. Moreover, it was admitted by Cavins at trial that there was no medical reason to ever put a condom on a patient or stroke a patient's penis in order to induce an erection during a medical exam.

[14]     That said, "[t]he intent to arose or satisfy the sexual desires of the child or the older person may be established by circumstantial evidence and may be inferred 'from the actor's conduct and the natural and usual sequence to which such conduct usually points.'" *Kanady v. State*, 810 N.E.2d 1068, 1069–70 (Ind. Ct. App. 2004) (quoting *Nuerge v. State*, 677 N.E.2d 1043, 1048 (Ind. Ct. App. 1997), *trans. denied.*). "'[T]he intent to arouse or satisfy sexual desires may be inferred from evidence that the accused intentionally touched a child's genitals.'" *Kirk v. State*, 797 N.E.2d 837, 841 (Ind. Ct. App. 2003) (quoting

*Lockhart v. State*, 671 N.E.2d 893, 903 (Ind. Ct. App. 1996)), *trans. denied*. Evidence of Cavins's stroking of the boys' penises, acts clearly outside the scope of acceptable medical practice, permitted the jury to infer his intent to arouse or satisfy the sexual desires of either the boys or himself from. *See Spann v. State*, 850 N.E.2d 411, 414 (Ind. Ct. App. 2006) (affirming child molesting conviction where the defendant intentionally touched the victim's penis on two occasions); *Lockhart*, 671 N.E.2d at 903 (affirming child molesting conviction when the defendant touched the victim's penis and rubbed it for approximately five minutes).

[15] Cavins's statements to some of the boys also support a finding that he had the requisite intent. Cavins commented to B.H. that B.H.'s penis was not getting hard, implying that Cavins's intent when stroking B.H.'s penis was to cause an erection. Cavins mentioned to A.M. about "[j]erking off[,]" a clear reference to masturbation. Tr. Vol. III p. 132. Finally, Cavins's admonitions to A.M. that he "d[id]n't have to tell [his] parents about this" and to S.H. to "keep it between us" tend to establish that Cavins was well aware that his actions did not conform to acceptable medical standards and were criminal in nature. Tr. Vol. III p. 166; Vol. IV p. 46. We conclude that the jury had ample evidence from which it could infer that Cavins had the requisite intent to support his five convictions.

# II. Cavins's Sentence

[16] Cavins was convicted of two counts of Level 4 felony[1] child molesting, for each of which the trial court sentenced him to nine years of incarceration with two suspended to probation; one count of Level 5 felony[2] sexual misconduct with a minor, for which the trial court sentenced him to three years of incarceration; and two counts of Level 6 felony[3] child seduction, for each of which the trial court sentenced him to one year of incarceration. Cavins's sentences for his two child molesting convictions were enhanced from the advisory of six years of incarceration to nine, resulting in a moderately-enhanced, aggregate sentence of twenty-three years of incarceration with four years suspended to probation.

## A. Whether the Trial Court Abused Its Discretion in Sentencing Cavins

[17] Under our current sentencing scheme, "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2008). We review the sentence for an abuse of discretion. *Id.* An abuse of discretion occurs if "the decision is clearly against the logic and effect of the facts and circumstances."

---

[1] The sentencing range for a Level 4 felony is two to twelve years of incarceration with an advisory sentence of six years. Ind. Code § 35-50-2-5.5.

[2] The sentencing range for a Level 5 felony is one to six years of incarceration with an advisory sentence of three years. Ind. Code § 35-50-2-6(b).

[3] The sentencing range for a Level 6 felony is six months to two and one-half years of incarceration with an advisory sentence of one year. Ind. Code § 35-50-2-7(b).

*Id.* A trial court abuses its discretion if it (1) fails "to enter a sentencing statement at all[,]" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons," (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or (4) considers reasons that "are improper as a matter of law." *Id*. at 490–91. However, the relative weight or value assignable to reasons properly found, or to those which should have been found, is not subject to review for abuse of discretion. *Id*.

[18] Cavins appears to argue that it was an abuse of discretion to sentence him to consecutive sentences for his five felony convictions. Indiana Code Section 35-50-1-2(c) provides, in relevant part, that "the court shall determine whether terms of imprisonment shall be served concurrently or consecutively" by considering aggravating and mitigating circumstances. In imposing consecutive sentences here, the trial court specifically stated that it was doing so because of the five separate victims involved in Cavins's five sex offenses. The Indiana Supreme Court has held that "[w]hen the perpetrator commits the same offense against two victims, enhanced and consecutive sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person." *Serino v. State*, 798 N.E.2d 852, 857 (Ind. 2003). Cavins does not argue that this was an improper basis on which to order consecutive sentences.

[19]    The trial court also properly rejected Cavins's proffered mitigators. Cavins briefly references three proffered mitigators he argues the trial court should have afforded more weight: his lack of criminal history, his dedication to the community and his family, and the undue hardship on his family resulting from his incarceration. An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer*, 868 N.E.2d at 493 (citing *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999)). The finding of mitigating factors is not mandatory and rests within the discretion of the trial court. *Williams v. State*, 997 N.E.2d 1154, 1163 (Ind. Ct. App. 2013) (citing *Flickner v. State*, 908 N.E.2d 270, 273 (Ind. Ct. App. 2009)). "'If the trial court does not find the existence of a mitigating factor after it has been argued by counsel, the trial court is not obligated to explain why it has found that the factor does not exist.'" *Anglemyer*, 868 N.E.2d at 493 (quoting *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993)). The trial court is also not required to give the same weight to proffered mitigating factors as the defendant does. *Williams*, 997 N.E.2d at 1163–64.

[20]    The trial court properly gave Cavins's lack of criminal history some, but not significant, mitigating weight. "A defendant's lack of criminal history can no longer be said to always be a significant mitigating factor." *Id.* at 1164. "To hold that a particular factor is always significant suggests that the trial court has an obligation to give certain weight to that factor," which is contrary to the holding in *Anglemyer* that a trial court cannot abuse its discretion in how it

weighed the aggravating and mitigating factors. *Id*. (citing *Anglemyer*, 868 N.E.2d at 491). In fact, "the weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review." *Weedman v. State*, 21 N.E.3d 873, 893 (Ind. Ct. App. 2014) (citing *Anglemyer*, 868 N.E.2d at 491), *trans. denied*. Cavins is thus not entitled to appellate review of the trial court's finding that his lack of criminal history is entitled to minimal weight.

[21] As for Cavins's proffered mitigators of his dedication to the community and/or family and undue hardship on his family if incarcerated, we conclude that the trial court properly rejected both. First, Cavins's dedication to his community and his family was not a proffered mitigator in his sentencing memorandum. A trial court does not abuse its discretion in failing to consider a mitigating factor that was not raised at sentencing. *Anglemyer*, 868 N.E.2d at 492. Putting aside that Cavins's dedication to his community included violating that community's trust in him by committing sex offenses against his patients, this proffered mitigator is precluded from review. *See id.* (precluding from review mitigators that were not presented to the trial court).

[22] As for Cavins's argument that undue hardship should be considered a mitigating circumstance, Cavins has failed to sustain his burden of showing that it was significant and supported by the record. "Many persons convicted of serious crimes have one or more children and, absent special circumstances, trial courts are not required to find that imprisonment will result in an undue hardship." *Comer v. State*, 839 N.E.2d 721, 730 (Ind. Ct. App. 2005) (quoting *Dowdell v. State*, 720 N.E.2d 1146, 1154 (Ind. 1999)), *trans. denied*. Cavins has

failed to show special circumstances here. Cavins's argument in this regard notes that he has been the primary financial provider for his family since 2013, that his wife is a stay-at-home mother to their two children, and that it "would add additional stress and an undue burden" for his wife to "have to resort to working outside the home and care for their two children." Appellant's App. Vol. III p. 46. Cavins's wife has a college degree in mathematics and worked in a financial firm for ten years (2003 to 2013) before electing to stay at home. As found by the trial court, "Cavins's spouse can work and provide for the family and any financial hardship is equally likely to be the result of the Cavins losing his medical license." Appellant's App. Vol. III p. 100. In other words, Cavins's wife is going to have to return to work to support the family in any event. The trial court did not abuse its discretion in rejecting this proffered mitigating circumstance, nor in sentencing Cavins.

## B. Whether Cavins's Sentence is Inappropriate

[23] We "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B). "Although appellate review of sentences must give due consideration to the trial court's sentence because of the special expertise of the trial bench in making sentencing decisions, Appellate Rule 7(B) is an authorization to revise sentences when certain broad conditions are satisfied." *Shouse v. State*, 849 N.E.2d 650, 660 (Ind. Ct. App. 2006), *trans. denied*. (citations and quotation marks omitted). "[W]hether we regard a sentence as

appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). In addition to the "due consideration" we are required to give to the trial court's sentencing decision, "we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).

[24] Given the violation of trust and number of victims involved, the nature of Cavins's offenses is somewhat egregious. Cavins, a pediatrician, committed sex offenses against five of his patients, thereby violating the high level of trust reasonably placed in him by them and their families. Patients and their families have a right to expect that their doctors, highly trained and respected members of the community who are held to high ethical standards, will help them, not harm them. That, however, is precisely what occurred here. As for the fact that five victims are involved in this case, as mentioned the Indiana Supreme Court has held that where multiple victims are involved, "enhanced and consecutive sentences seem necessary to vindicate the fact that there were separate harms and separate acts against more than one person." *Serino*, 798 N.E.2d at 857. Cavins's violation of the trust of his patients and their families and the number of his victims justify his sentence.

[25] As for Cavins's character, while we acknowledge his lack of prior criminal history, we do not think that it can be emphasized enough that Cavins abused his position as a trusted medical professional to commit sex offenses against five

of his minor patients. To say that this speaks ill of Cavins's character is to say the very least. Cavins's character does not warrant a reduction in his sentence. Cavins has failed to establish that his aggregate twenty-three-year sentence with four years suspended to probation is inappropriate in light of the nature of his offenses and his character.

[26] We affirm the judgment of the trial court.

Kirsch, J., and May, J., concur.